Mark Goldstein, Cal. Bar No.175318
mgoldstein@socalip.com
Michael D. Harris, Cal. Bar No. 59,470
mharris@socalip.com
SoCal IP Law Group LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Lisa Corson,<br>Plaintiff,<br>v.<br>Tara Ann Rose, et al,<br>Defendants. | NO. 2:26-CV-2579-MWF-AJR<br>Defendants' Opposition to Motion for Default Judgment<br>Date: October 7, 2026<br>Time: 10:00 a.m.<br>District Judge Michael W. Fitzgerald<br>Magistrate Judge A. Joel Richlin |

Defendants Tara Ann Rose and Tea Rose Realtor, Inc. oppose the damages, costs, and attorney's fees requested in Plaintiff Corson's Motion for Default Judgment.

## TABLE OF CONTENTS

A. Introduction ....1
B. Plaintiff's requested relief ....1
C. Relevant Facts ....5
1. The Photograph had no Commercial Impact ....6
2. Defendants Tried to Settle. ....6
3. Plaintiff Never Licensed the Photograph and Does Not Offer Social-Media Licenses ....7
4. Plaintiff's Exhibits Show No Measurable Engagement or Commercial Harm. ....8

5. The Getty Images Comparator Reflects a $283 Market Rate.........................8

D. Plaintiff's Requested Damages .....................................................................9

1. Actual Damages, Profits or Statutory Damages ...........................................9

2. Plaintiff's Admission and Hypothetical Calculation Do Not Establish a $3,200 Loss. ........................................................................................ 11

3. The Relevant Circumstances Weigh Against a Willfulness Enhancement.. 11

4. Plaintiff's Open-Ended Attorney's-Fee Request Should Be Denied. .......... 12

5. If the Court Deems Further Evidence Is Necessary, the Court Should Require the Parties and their Counsel be Present at the Hearing on the Motion. ....................................................................................... 13

E. Conclusion ..................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Bell v. Wilmott Storage Servs, LLC*, 12 F.4th 1065 (9th Cir. 2021)...........................10

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211 (9th Cir. 1997).....................................................................................12

*Fantasy, Inc. v. Fogerty*, 94 F.3d 555 (9th Cir. 1996)..............................................12

*Rosen v. Netfronts, Inc.*, No. 12-CV-658 CAS FFMX, 2013 WL 3467205 (C.D. Cal. July 9, 2013) .................................................................................9

**Other Authorities**

17 U.S.C. § 504.....................................................................................4, 9

17 U.S.C. § 504(b) ...............................................................................2, 8

17 U.S.C. § 504(c)(2) ...................................................................2, 5, 9, 13

Federal Rule of Civil Procedure 55(b)(2)...................................................13

## A. INTRODUCTION

This case is about an image on the business social media website LinkedIn. A post by defendants to an Los Angeles Magazine online story[1] about living in Calabasas, California, included one image of the Leonis Adobe building and sign.[2] When Plaintiff's counsel contacted Defendants, Defendants removed the image and the posting immediately from Rose's LinkedIn account. First Amended Complaint ("FAC") para. 41. Plaintiff sued defendants two years later over the one image. Plaintiff does not deserve the award she seeks because it is much greater than her damages or the value of the image. The award should be just and proportionate to the circumstances.

## B. PLAINTIFF'S REQUESTED RELIEF

Plaintiff asks for $16,000. Her calculation relies on generalized pricing estimates rather than an actual license for the photograph, assumes a disputed four-year duration, and applies a five-fold multiplier for which she has no support. Plaintiff admits never licensing this photograph (Goldstein Decl. Ex. F), does not license this photograph for social media use (Goldstein Decl. Ex. F), and instead relies on generalized three- and five-year pricing estimates to produce a hypothetical four-year value of $3,200 though Defendants removed the image immediately after Plaintiff demanded removal. Plaintiff's asserted $3,200 licensing value is neither the price of an actual license for the photograph nor a rate she ordinarily charges for social-media use.

Plaintiff's own exhibits show no commercial harm. She names Exhibit E to the FAC as the screenshot of the challenged LinkedIn post. The challenged post reflects no measurable views, likes, reactions, comments, shares, or impressions. Plaintiff has

[1] See https://lamag.com/travel/small-towns-calabasas/ for story and photo at issue.
[2] See https://www.leonisadobemuseum.org/ for the museum's webpage.

not shown that the post generated audience engagement, increased Defendants' revenue, displaced a licensing transaction, or caused any other measurable market injury. Moreover, as we all know, a LinkedIn post is only viewed for a short time, as only the most recent posts are promoted in LinkedIn feeds.

Defendants' conduct does not support Plaintiff's willfulness allegation. Defendants removed the photograph upon notice and explained her good-faith belief that the social-media platform generated the image from a link to the underlying article.

Importantly, Plaintiff's photograph of the Leonis Adobe still appears today on a Los Angeles Magazine web page that includes the promotion "Don't keep it to yourself…share the love!" with links to automatically post to the social media platforms Facebook and X. Plaintiff. Goldstein Decl. ¶19 Ex. G. The automatic posting to Facebook includes a copy of Plaintiff's image. As of today, the Los Angeles Magazine web page with Plaintiff's photograph still includes no copyright notice and no attribution to Plaintiff. Goldstein Decl. ¶19 Ex. G.

Defendants also asked for legible screenshots and forensic evidence needed to evaluate Plaintiff's contrary theory. Defendants also attempted in good faith to settle, showing good-faith engagement and an effort to resolve the dispute repeatedly. Defendants rely on the offers to rebut Plaintiff's assertions that Defendants acted in bad faith, refused meaningful compensation, or require an extraordinary damages award for punishment and deterrence.

Plaintiff proved no actual damages or attributable profits under 17 U.S.C. § 504(b), which permits recovery only of actual damages resulting from the infringement and profits attributable to the infringement. If the Court still awards statutory damages, Defendants request the Court exercise its discretion to reduce the award to $200 under the innocent-infringer provision, 17 U.S.C. § 504(c)(2). That provision allows for a $200 award when an infringer proves it was unaware and had no reason to believe its acts were copyright infringement. Or the Court could award no more

than $283, which is the sum of a social media license for a similar photo, the market comparator. These are more appropriate than Plaintiff's unsupported $16,000 demand.

As to enhanced damages and attorney's fees, the alleged infringement and pertinent facts show Plaintiff does not deserve a windfall disconnected from the circumstances and impact of the photograph's use.

Plaintiff seeks $16,000 in statutory damages, $775 in costs, additional attorney's fees to be determined later, and post-judgment interest based on the alleged use of one photograph in one social-media post. Plaintiff derives the requested statutory award by multiplying a hypothetical $3,200 licensing value by five, even though Plaintiff has never licensed the photograph and does not license her photographs for social-media use. See Goldstein Decl. Ex. F.

Plaintiff acknowledges that she does not license her photographs for social-media use. Rather than identify an actual transaction involving this photograph or a rate Plaintiff charges for the use, Plaintiff presents generalized estimates of $2,805 for three years and $3,598 for five years, averages those figures to obtain a hypothetical four-year value of $3,200, and then multiplies that figure by five.

The record also shows no measurable commercial impact from the challenged post. Plaintiff alleges that Exhibit E of the FAC is a screenshot of the photograph Defendants' LinkedIn posts. That exhibit reflects no measurable views, likes, reactions, comments, shares, or impressions. The absence of audience reach or engagement undermines Plaintiff's theory that the photograph operated as an effective commercial draw, increased Defendants' customer base, generated revenue, or caused measurable market harm.

The facts provided by Plaintiff refute Plaintiff's damages request. Plaintiff has no license for the photograph, no established licensing practice, and no completed transaction supporting the asserted $3,200 value. Because actual damages and profits

are limited to harm resulting from the infringement and profits attributable to the infringement, that amount is $0. 17 U.S.C. § 504.

The absence of commercial harm also bears directly on any statutory award. Although Plaintiff elected statutory damages, the award should remain just and proportionate to the circumstances. Plaintiff's own declaration recognizes that statutory damages should bear a relationship to actual damages. Higbee Decl. ¶ 51. Yet the record has no evidence of a lost transaction, attributable profit, customer inquiry, or measurable audience engagement resulting from the challenged post.

Plaintiff's requested enhancement also rests on an unsupported portrayal of Defendants as willful and recalcitrant. The FAC at paragraph 41 explains that when Plaintiff complained, Defendants removed the photograph upon notice. Defendants also explained that the LinkedIn platform generated the image from an external link to the underlying article. Defendants asked for legible screenshots and forensic evidence to evaluate Plaintiff's accusation. Defendants continued to question whether the photograph was copied and provided an example showing that linking the article caused the platform to retrieve an image. And even if *in arguendo* a copy of the photo was included in a short-lived post, that image is like the image the LinkedIn platform automatically generates when linking to a web page containing an image.

Defendants also tried to settle often. On April 23, 2026, Defendant offered $783 based on a $283 license for a similar photo for social media use via Getty Images and $500 attorneys' fees. On May 21, 2026, Defendants made a settlement offer of $2,700. On July 15, 2026, Defendant made settlement offers of $3,300 and then $3,500. On July 17, 2026, Defendant offered $3,800 to settle. Goldstein Decl. ¶¶4-13 and Exs. A through E.  These settlement offers were not nominal gestures. They reflect an escalating effort to resolve the dispute, culminating in an offer that exceeded the $283 market comparator by about 13.4 times.  Defendant's final offer even exceeded Plaintiff's asserted $3,200 hypothetical license value by $600.

Defendants proffer the settlement communications to rebut Plaintiff's characterization of Defendants as indifferent, recalcitrant, unwilling to provide meaningful compensation, or in need of exceptional punishment and deterrence. Even if the Court declines to consider the offers, Defendants' prompt removal of the photograph, contemporaneous technical explanation, requests for supporting evidence, and continued investigation independently weigh against enhanced damages.

Plaintiff's requested $16,000 award would be unjust because she proved no actual damages, no attributable profits, and no measurable commercial harm. If the Court awards statutory damages, it should reduce the award to $200 under the innocent-infringer provision. 17 U.S.C. § 504(c)(2). If the Court declines to apply that provision, it should impose no more than a typical royalty for this photo, the $283 social media license supported by market evidence.[3]

## C. Relevant Facts

Plaintiff claims to own the copyright of a photograph depicting an area of Calabasas Road near the Leonis Adobe museum in Calabasas. The FAC identifies the photograph as "LisaCorson-SmallTowns-0173" and is included among the photographs covered by Registration Number VA 2 358, effective November 2, 2018.

Plaintiff alleges that the photograph appeared on a LinkedIn page maintained under the name "Tara Rose Wales," accompanied by the text, "What sets it apart is thousands of open-space acres," and a link to an article about Calabasas. Plaintiff alleges Defendants used the post for commercial purposes and intended the photograph to draw viewers to the post and generate real estate business.

---

[3] See www.gettyimages.com/purchase/price-calculator/564067487 for the pricing calculator for a license to a similar Leonis Adobe photo. The $283 value is achieved by selecting Digital Media, Social Media, under 1 million followers, duration up to 3 years, United States, and Property/Real Estate.

**1. The Photograph had no Commercial Impact**

The FAC's evidence shows no commercial impact. Exhibit E to the FAC is identified as the screenshot of the challenged post. The post reflects no measurable views, likes, reactions, comments, shares, or impressions. That absence of engagement materially undermines Plaintiff's allegation that the photograph drew viewers, promoted Defendants' services, increased customer interest, or generated attributable revenue. Moreover, a LinkedIn post is only viewed for a short time, as only the most recent posts are promoted in LinkedIn feeds. This well known fact shows that the LinkedIn post of the photograph had, at most, limited commercial impact.

After Plaintiff asserted her claim, Defendants stopped displaying the photograph. Plaintiff's pleading admits that, on March 26, 2024, Defendant's counsel advised Plaintiff that the photograph had been removed. Counsel also explained that the social-media platform automatically generated the image from an external link to the underlying article. Counsel asked for legible screenshots and exemplars of any forensic evidence so Defendants could evaluate the merits of Plaintiff's claim.

Plaintiff disagreed with that explanation. Plaintiff's counsel asserted that a platform-generated post would have included identifying information for the underlying article and contended that the absence of that information showed that the image was manually uploaded. Defendants, through subsequent counsel, continued to question the manual-upload theory and provided an example showing that the LinkedIn platform displayed the photo when counsel linked to the article.

**2. Defendants Tried to Settle.**

Plaintiff's own submissions acknowledge that Defendants wanted to focus on settlement and that the parties tried to negotiate. Consistent with that acknowledged effort, Defendants made multiple settlement offers, including:

1. On April 23, 2026, Defendant made a settlement offer of $783.
2. On May 21, 2026, Defendant made a settlement offer of $2,700.

3. On July 15, 2026, Defendant made a settlement offer of $3,300.

4. On July 15, 2026, Defendant made a further settlement offer of $3,500.

5. On July 17, 2026, Defendant made a settlement offer of $3,800.

The offers show repeated, good faith attempts to resolve the matter. The final offer exceeded the $283 comparable market rate by $3,517. Defendants rely on the offers to rebut Plaintiff's assertions of bad faith, recalcitrance, refusal to provide meaningful compensation, and the alleged need for an exceptional deterrence-based award.

**3. Plaintiff Never Licensed the Photograph and Does Not Offer Social-Media Licenses.**

Plaintiff acknowledges that she does not license her photographs for social-media use. Goldstein Decl. Ex. F. Plaintiff therefore cannot identify an established rate she ordinarily charges for the precise use alleged here.

Plaintiff instead relies on generalized pricing estimates for social-media use: $2,805 for three years and $3,598 for five years. Plaintiff averages those estimates to obtain a hypothetical four-year value of $3,200 and then multiplies that number by five to request $16,000. Neither estimate reflects an actual transaction involving this photograph, a comparable photograph licensed by Plaintiff, a comparable customer, or an established social-media-only rate charged by Plaintiff. The estimates also assume fixed multiyear terms without independently showing those parameters reasonably describe the scope, duration, audience, or commercial effect of the challenged post.

**4. Plaintiff's Exhibits Show No Measurable Engagement or Commercial Harm.**

Plaintiff's theory is that the photograph had commercial value because it allegedly drew attention to a real estate-related social-media post. Plaintiff alleges that Defendants intended the photograph to create a visually inviting presentation, entice users to browse the LinkedIn page, and ultimately generate real estate business.

Exhibit E to the FAC, which Plaintiff identifies as the screenshot of the challenged post, does not show the alleged result. The post reflects no measurable views, likes, reactions, comments, shares, or impressions. It provides no evidentiary basis to find that the photograph reached a measurable audience, generated engagement, attracted customers, enhanced Defendants' marketing, or produced attributable revenue.

The absence of measurable engagement materially limits damages. Plaintiff identifies no actual lost transaction. Plaintiff identifies no customer who declined to license the photograph. Plaintiff identifies no revenue because of the post. Plaintiff provides no evidence of commercial benefit traceable to the photograph. Plaintiff has proven no actual damages and no attributable profits under 17 U.S.C. § 504(b).

**5. The Getty Images Comparator Reflects a $283 Market Rate.**

Defendants' independent evidence shows that, on April 17, 2026, a social-media license for an image depicting the same subject matter was available for $283. Goldstein Decl. ¶5, Ex. A. The comparator concerns the same licensing medium and comparable subject matter and supplies a concrete marketplace price rather than an estimate constructed by averaging different licensing periods.

The $283 comparator aligns more closely with Defendants' limited use of the photo alleged in the FAC. The claim concerns one photograph associated with one social-media post linking to an article about Calabasas. Plaintiff identifies no actual

lost transaction, attributable profit, repeat infringement, continued display after notice, or measurable audience engagement from the challenged post.

The settlement history also shows Defendants tried to resolve the matter for amounts materially exceeding this comparator. Defendant's July 17, 2026, offer of $3,800 was about 13.4 times the comparator. Defendants' escalating offers support Defendants' position that they engaged in good faith and sought a practical resolution.

D. **PLAINTIFF'S REQUESTED DAMAGES**

**1. Actual Damages, Profits or Statutory Damages**

The Copyright Act permits a copyright owner to recover either actual damages and attributable profits or statutory damages. Actual damages must result from the infringement, and recoverable profits must be attributable to the infringement. 17 U.S.C. § 504. If the record shows no measurable engagement, no revenue because of the challenged use, and no displaced license, the compensatory and profit-based measure is zero.

For statutory damages, the Court retains discretion to determine a just award. If an infringer proves that it was unaware and had no reason to believe its conduct was infringement, the Court may reduce statutory damages to a sum of not less than $200. 17 U.S.C. § 504(c)(2) The innocent-infringer determination requires an inquiry into the defendant's state of mind, and a defendant may rely on evidence introduced by the plaintiff that supports innocence. *See Rosen v. Netfronts, Inc.*, No. 12-CV-658 CAS FFMX, 2013 WL 3467205, at *4 (C.D. Cal. July 9, 2013) ("[Defendant's] defense therefore does not contest his knowledge of whether the acts constituted infringement, but instead rests on his assertion that—at the time the infringement commenced—he had a reasonable belief that he was not engaging in the acts constituting infringement. The Court finds that [defendant's] infringement was innocent.")

Innocent intent does not defeat liability. But it remains directly relevant to the remedy. The Copyright Act addresses accidental, technical, or unwitting infringement by permitting statutory damages to be reduced to $200. *Bell v. Wilmott Storage Servs, LLC*, 12 F.4th 1065, 1082 (9th Cir. 2021).

The Court should award plaintiff $0 because that is the amount it proved in actual damages and attributable profits.

Alternatively, the $283 market rate is the proper compensatory benchmark if the court uses a market measure.

If the Court uses a market measure to assess proportionality, the $283 comparator provides a more concrete benchmark than Plaintiff's hypothetical $3,200 figure. Defendants' evidence shows on April 17, 2026, a social-media license for an image depicting the same subject matter was available for $283. Goldstein Decl. ¶ 4, Ex. A.

The $283 comparator more closely corresponds to the alleged use because it reflects an available market price for social-media use involving comparable subject matter. Plaintiff's $3,200 figure is an average of generalized three- and five-year estimates and is not tied to an actual license for this photograph or a common social-media rate charged by Plaintiff.

The limited scope and showed limited impact of the alleged use further support the $283 benchmark. The claim concerns one photograph associated with one social-media post. Plaintiff has not shown an actual lost transaction, attributable profit, repeat infringement, continued display after notice, or measurable audience engagement.

Plaintiff seeks about 56.5 times the $283 comparator. Nothing in the record justifies that disparity. If the Court relies on market value when selecting a statutory award, it should use the $283 comparator to assess proportionality and reject Plaintiff's unsupported $16,000 demand.

### 2. Plaintiff's Admission and Hypothetical Calculation Do Not Establish a $3,200 Loss.

Plaintiff offers no actual license for the photograph and no established social-media licensing rate. Plaintiff admits she does not license her photographs for social-media use. Goldstein Decl. Ex. F. That means her asserted $3,200 value is not based on a past license for the photograph, a common rate she charges for comparable social-media use, a quote she provided to a prospective customer, or a transaction displaced by the challenged post.

Instead, Plaintiff relies on generalized estimates of $2,805 for three years and $3,598 for five years. She averages those estimates to construct a hypothetical four-year value of $3,200. That method compounds multiple assumptions about the duration, scope, audience, and commercial effect of the alleged use.

The asserted four-year duration also has no support. Plaintiff alleges that she discovered the post in April 2023, but she relies on an annotation in a screenshot to infer that the content was uploaded four years earlier. That annotation does not establish continuous accessibility. Moreover, it is well known a LinkedIn post is only viewed for a short time, as only the most recent posts are promoted in LinkedIn feeds.

Plaintiff's calculation does not persuade because the challenged post reflects no measurable views, likes, reactions, comments, shares, or impressions. $3,200 is a hypothetical average that does not represent an actual loss. Plaintiff seeks $16,000 for a post with no demonstrated audience interaction or reach.

### 3. The Relevant Circumstances Weigh Against a Willfulness Enhancement.

The totality of the evidence weighs against enhanced damages Defendants removed the photograph upon notice. Defendants asked for legible screenshots and forensic evidence. Defendants articulated a specific platform-generation explanation and later supplied examples. Plaintiff alleges no continued display after Defendants

communicated removal. Defendant made escalating settlement offers, culminating in an offer of $3,800 even though the market rate was $283. Plaintiff does not license her photographs. The challenged post reflects no measurable views, reactions, comments, shares, or impressions. The comparable social-media rate is $283. The Copyright Act permits reduction to $200 upon proof of innocent infringement.

Collectively, these circumstances do not support the punitive inference on which Plaintiff's fivefold multiplier depends. They instead show remedial action, investigation, a contemporaneous good-faith explanation, and repeated efforts to resolve the dispute.

Plaintiff's $16,000 demand is 80 times the $200 innocent-infringer minimum.

Plaintiff's $16,000 demand is about 56.5 times the $283 social-media license rate for a comparable photograph.

No demonstrated aggravating circumstance supports this multiplier or sum.

Plaintiff identifies no actual license for the photograph, no established social-media rate, no attributable profit, no displaced transaction, no repeat infringement, no continued display after notice, and no evidence of measurable audience engagement. The record instead concerns one disputed social-media post followed by removal, investigation, a specific technical explanation, requests for evidence, and escalating settlement offers.

Defendants' decision to not litigate does not show copyright injury or a need for enhanced damages.

**4. Plaintiff's Open-Ended Attorney's-Fee Request Should Be Denied.**

A court's discretion to award attorney's fees under the Copyright Act "is not cabined by a requirement of culpability on the part of the losing party." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996). Courts are given "wide latitude" to grant or deny fee awards. *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997).

The challenged post reflects no measurable engagement and objective market evidence supports a $283 comparator. Defendants' conduct also supports the $200 innocent-infringer minimum. Fees incurred by Plaintiff in pursuing relief far exceeding a proportionate award should not be shifted to Defendants.

**5. If the Court Deems Further Evidence Is Necessary, the Court Should Require the Parties and their Counsel be Present at the Hearing on the Motion.**

If the Court cannot determine damages on the papers, the Court should require the parties and their counsel to be present in person at the hearing on the motion under Federal Rule of Civil Procedure 55(b)(2). A separate hearing is not needed as this motion is already on calendar. Having the parties present in person will allow the Court to better evaluate damages, attributable profits, commercial harm, willfulness, innocent infringement, the duration and scope of the alleged display, and pertinent facts.

E. **CONCLUSION**

Defendants respectfully request that the Court:

1. Reject Plaintiff's asked for $16,000 statutory-damages award;

2. Find that Plaintiff has proven $0 in actual damages, $0 in attributable profits, and no measurable commercial harm from the challenged post;

3. Award Plaintiff $200 statutory damages under the innocent-infringer provision of 17 U.S.C. § 504(c)(2);

4. Find that the evidence does not support enhanced damages based on willful infringement; and

5. Hold the evidence does not support an award of attorney fees to Plaintiffs.

September 16, 2026

/Mark Goldstein/
Mark A. Goldstein
SoCal IP Law Group LLP

Attorneys for Defendants Tara Ann Rose
and Tea Rose Realtor, Inc.

**Certificate of Service**

I certify that a true and correct copy of the above and foregoing document has been served on September 16, 2026, to all counsel of record deemed to have consented to electronic service via the Court's CM/ECF system.

September 16, 2026

/Anneliese Lomonaco/
Anneliese Lomonaco