Mathew K. Higbee, Esq.
California Bar No. 241380
**HIGBEE & ASSOCIATES**
3110 W. Cheyenne # 200
N. Las Vegas, NV 89032
(714) 617-8350
(714) 597-6559 facsimile
Email: mhigbee@higbee.law

*Attorney for Plaintiff*,
LISA CORSON

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

LISA CORSON**,**

Plaintiff,

v.

TARA ANN ROSE and TEA ROSE REALTOR, INC.,

Defendants.

Case No. 2:26-cv-02579-MWF-AJR

**REPLY IN SUPPORT OF MOTION AND MOTION FOR DEFAULT JUDGEMENT**

Judge: Hon. Michael W. Fitzgerald
Courtroom: 5A
Hearing Date: October 7, 2026, 10:00 a.m.

Plaintiff Lisa Corson ("Plaintiff"), by and through her undersigned counsel, respectfully submits this Reply in Support of her Motion for Entry of Default Judgment ("Reply") against Defendants Tara Ann Rose ("Rose") and Tea Rose Realtor, Inc. ("Tea Rose Realtor") (collectively, the "Defendants").

Plaintiff renews her previous request that the Court consider this matter appropriate for disposition without a hearing pursuant to Fed. R. Civ. P. 78(b) and Local Rule 7-15.

In support of her Reply, Plaintiff shows the following.

## INTRODUCTION

What started as Defendants' blatant misappropriation of Plaintiff's "Corson Photograph" to market their real estate business on LinkedIn has devolved into Defendants' procedural evasion of the Federal Rules to defend their actions.

On July 20, 2026, the Clerk of this Court entered default against Defendants because Defendants did not to respond to Plaintiff's First Amended Complaint ("FAC"). (*See* Dkt. 18.) Once the default was entered, all factual allegations in the FAC, except those relating to the amount of damages, were deemed true, ***including the allegations of willfulness***. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (emphasis added). Put simply, Defendants are cut off from opposing any factual allegations in the FAC, other than the amount of damages.

This rule of law exists for good reasons. A defaulting defendant has chosen not to engage in resolving the merits of the case the way the system is designed and intended. A defendant's voluntary choice not to participate in resolution of the case on its merits forecloses the plaintiff's opportunity to flesh out the facts and evidence through discovery and makes it impossible to comply with the requirement that information presented to the court for its consideration be properly obtained.

Here, Defendants are procedurally moving this matter forward in a manner that skirts the Federal Rules and established case law by applying a backdoor approach to oppose this default as if it were a motion for *summary* judgment. Defendants' opposition contests Plaintiff's factual allegations, including willfulness, commercial impact of the Corson Photograph, and length of time they used the Corson Photograph and alleges a defense of innocent infringement. Plaintiff will be prejudiced if, without the benefit of discovery, the Court were to consider any information Defendants present, beyond the amount of damages.

Therefore, Plaintiff respectfully requests that the Court give no weight to any evidence Defendants have introduced that does not directly relate to the amount of damages.

## ARGUMENTS

### I. Entry Of Default Cut Off Defendants From Opposing Any Facts Not Related To The Amount Of Damages.

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d at 702 (quoting *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.1987)). Here, Defendants purposely chose not to respond to Plaintiff's factual allegations in the FAC – including, *inter alia*, allegations of willfulness. This forced Plaintiff to begin the default process. The Clerk entered default (Dkt. 18), and shortly thereafter, Plaintiff filed a motion for default judgment (Dkt. 20.)

#### *A. Plaintiff's Allegations Of Willfulness Must Stand*

At this juncture, because default has been entered, all factual allegations in the FAC, that are not related to the amount of damages, are deemed true, ***including the allegation of willfulness***. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d at 702 (emphasis added). Yet even though Defendants cannot oppose the factual allegations in the FAC that are not related to the amount of damages, Defendants have reached well beyond the general rule of law and improperly approach the motion for default through the backdoor and treat it as a motion for summary judgment with all facts ripe to be contested and supporting evidence to be submitted. In fairness to Plaintiff, she offers her rebuttal against Defendants' contentions.

To begin, Defendants challenge Plaintiff's well-pleaded allegations of willfulness, commercial impact of the Corson Photograph, and length of time they used the Corson Photograph and raise a merits-based defense of innocent infringement. Then, Defendants offer evidence for the Court's consideration to support each contention and the innocent infringement defense, none of which relate to the *amount of damages* at issue. Notably, Defendants heavily contest Plaintiff's allegations of willfulness. But case law is clear: "Where the defendant has defaulted, willful

copyright infringement is proven." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880 (S.D. Ohio, May 18, 2007).

Even though Defendants' willfulness is proven through their default, Plaintiff clearly alleged that Defendants' conduct prior to and during litigation was willful to show the Court that she was not relying solely on Defendants' default to determine willfulness. As explained in the motion for default judgment, Defendants' most egregious prelitigation and litigation conduct was their continued contention that the Corson Photograph was autogenerated and embedded on LinkedIn and not manually generated by them. Plaintiff provided Defendants with clear, convincing, and unambiguous evidence *twice* that if the Corson Photograph had been embedded on the Infringing Post, as they claimed, it would have displayed in a completely different manner. It would have included the LA Magazine banner below the photograph displaying the LA Magazine article title and the URL, "lamag.com," and Defendants' post contained none of these attributes. But even with the unmistakable evidence Plaintiff provided to prove the Corson Photograph was manually generated, Defendants continued with their charade that they had an affirmative defense that the photograph was embedded.

Now, against procedure, Defendants contest Plaintiff's allegation of willfulness and improperly submit the following evidence to support their position that their conduct was not willful: (1) they removed the photograph upon notice; (2) had a good-faith belief LinkedIn autogenerated the Corson Photograph; (3) the Corson Photograph still appears today on the LA Magazine web page with the promotion "Don't keep it to yourself. . .share the love!" with links to automatically post to Facebook and X; (4) the Corson Photograph as displayed on the LA Magazine web page still includes no copyright notice and no attribution to Plaintiff; and (5) Defendants asked for legible screenshots and forensic evidence needed to evaluate Plaintiff's contrary theory that the Corson Photograph was manually generated.

First, even though Defendants removed the photograph upon notice, their continued and unsubstantiated contention that the Corson Photograph was autogenerated after Plaintiff provided clear and unambiguous evidence that it was not, shows Defendants continued to recklessly disregard Plaintiff's rights. This charade alone overshadows Defendants' contention that they held a good-faith belief that LinkedIn autogenerated the Corson Photograph.

Second, that the Corson Photograph still appears on the LA Magazine with links to post it on Facebook and Twitter clearly shows the LA Magazine intended for people to use the content from LA Magazine through an autogenerated link which would properly display the source of the article and photograph, and not by manually generating the Corson Photograph and a Hootsuite shortened link to the article on LinkedIn or any other social media website.

Third, that the Corson Photograph, as displayed in the LA Magazine article has no copyright notice or attribution to Plaintiff has no bearing on Defendants' willfulness or innocence. Copyright notices are no longer required on works of art and have not been required since the United States entered the Berne Convention in March of 1989.

Finally, Defendants claim that they asked for legible screenshots and forensic evidence to evaluate Plaintiff's theory that the Corson Photograph was manually generated. Plaintiff provided Defendants with a true and correct screenshot of the post on Defendants' LinkedIn page which identified the URL for the post as "linkedin.com/in/tararosere/recent-activity/images/." (Exhibit E to the FAC (Doc. 10-1, pp. 17-18.)) A simple viewing of Exhibit E to the FAC (Doc. 10-1, pp. 17-18), confirms the URL for the post is "linkedin.com/in/tararosere/recent-activity/images/." The URL clearly illustrates the Corson Photograph was stored on LinkedIn's and not LA Magazine's server meaning *it was manually uploaded to LinkedIn*. Plaintiff also provided Defendants with a screenshot to show them what the LinkedIn post would have looked like had the Corson Photograph been autogenerated by LinkedIn as they claimed (*see* Exhibit F to the FAC, Doc. 10-1, pp 19-20). Defendants' counsel also

provided Plaintiff's counsel with an example showing that linking the LA Magazine article to the LinkedIn post caused the LinkedIn platform to retrieve the Corson Photograph (*see* Exhibit 4 to the Motion for Default Judgment, Doc 20-2, pp. 12-13).

Both Plaintiff and Defendants' counsel's examples were <u>identical</u> to one another. They both included (1) the live link to the LA Magazine article, (2) the title of the LA Magazine article, *How to Make a Day of a Trip to Calabasas*, and (3) the "lamag.com" link back to the article. as well as completely different from the actual post. Unsurprisingly, Defendants' actual LinkedIn post <u>was not the same</u> as either Plaintiff's or Defendants' counsel's examples because the LinkedIn post did not include the LA Magazine article title or the "lamag.com" link back to the article.

Thus, Defendants' own proffered example clearly illustrates that Defendants *do* understand exactly how to create an autogenerated photograph, but <u>they did not use that knowledge or method</u> when they created the LinkedIn post. But even with this incontrovertible evidence, Defendants continued with their charade that LinkedIn autogenerated the Corson Photograph on their LinkedIn account and dug in that it is Plaintiff's burden to prove otherwise

Now, Defendants pivot and ask the Court to accept that if they didn't cause LinkedIn to autogenerate the photograph, then their manual generation of the photograph created the same results. Nonsense. While Defendants LinkedIn post does contain a manually generated Hootsuite shortened link to the LA Magazine article, nothing in the post indicates where that link will take the user. Instead, Defendants' LinkedIn post promotes Defendants' real estate business with numerous hashtags that clearly indicate where the user will be directed, and none of the hashtags will bring the user to the LA Magazine, the LA Magazine article, or information about Calabasas.

As to Defendants' request for legible screenshots, Plaintiff had already sent Defendants the cease-and-desist letter with screenshots. When Defendant Tara Rose was first contacted by Higbee & Associates, she clearly communicated that she had no intention of paying the claim. Plaintiff decided Defendants were not taking this matter

seriously and did not believe providing any additional information outside of litigation would help resolve the matter. So, Plaintiff chose to file suit and provided screenshots through the exhibits filed with the Complaint and FAC.

Defendants raising the issue that they asked for legible screenshots and forensic evidence is a bit mindboggling. If Defendants had asked for this information and *never* received it, then it would be understandable that they might have grounds to claim they did not have enough information to make an informed decision about how the Corson Photograph came to be displayed on their LinkedIn page. But Defendants received exactly what they requested, so both issues appear to be moot.

The default has been entered against Defendants, and all well-plead allegations not relating to the amount of damages are taken as true, including willfulness. Therefore, willfulness should not be a factual matter at issue.

***B. Innocent Infringement Must Not Be Considered.***

Defendants urge the Court to consider them innocent infringers and reduce a statutory damage aware to $200 as provided under 17 U.S.C. § 504(c)(2). First, the default has been entered against Defendants, which means Defendants have legally admitted all well-plead facts in the FAC and are cut off from asserting any defenses, including innocent infringement. Second, because Defendants have legally admitted all well-plead factual allegations, they have admitted that their conduct was willful, not innocent. Finally, Defendants' reliance on *Rosen v. Netfronts, Inc.* to support their argument has no merit. The *Rosen* court found the defendant's infringement was innocent *after considering evidence presented at trial*. *See Rosen v. Netfronts, Inc.*, No. 12-CV-658 CAS (FFMx), at *7 (C.D. Cal. July 9, 2013). Here, Defendants did not participate in this case, let alone go to trial, so the Court does not have the benefit of reviewing evidence related to Defendants' state of mind that was obtained through discovery. Thus, the *Rosen* court's decision has no application here.

Therefore, the Court should not consider Defendants' assertion of innocent infringement because the default has been entered, and Defendants have legally admitted to the well-plead allegation of willfulness, not innocence.

## II. Damages

### *A. Plaintiff's Requested Damages Are Reasonable And Properly Supported By Licensing Quotes From fotoQuote®, Duration Of Use, And The Willful Nature Of Defendants' Conduct.*

Defendants urge the Court not to accept Plaintiff's hypothetical license calculations. They argue that Plaintiff's damage calculation of $16,000 (1) relies on generalized pricing estimates based on licensing quotes from fotoQuote® rather than an actual license for the Corson Photograph, (2) assumes a *disputed* four-year duration, and (3) applies a five-fold multiplier without support. (Doc. 21, p. 1).

There is no requirement that a plaintiff must produce a previous license with the exact and identical terms of use as the unauthorized use to consider as the basis for actual damages. The Court can consider a hypothetical license to assess the fair market value of actual damages, and in fact, courts often craft hypothetical license based on various factors as a fall back to assess the fair market value of actual damages. *See Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004) ("[i]t is not improper for a jury to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on 'undue speculation.'")

Plaintiff chose to provide a license quote from fotoQuote® because the closest license that Plaintiff did have would have set damages at $7200 for four years. Plaintiff felt the quotes generated from fotoQuote were in line with her licensing practice and the actual damages at issue here. Thus, Plaintiff provided two license quotes from fotoQuote® and explained what parameters she entered to arrive at the quotes: use of an image on social media up to a full screen. One quote was for three years and the other for five years, and Plaintiff averaged the two quotes to arrive at an amount of $3200.00 for four years' use. This approach is not speculative.

Lost licensing fees of $3200.00 over a period of four years is a reasonable amount. Broken down, the amount per year is $800 which is just $50.00 more than the $750.00 statutory minimum amount for non-willful statutory damages.

Defendants argue that four years' use is disputed. Defendants did not participate in discovery, so Plaintiff has no information to present to the Court derived from interrogatories or depositions that would have fleshed out Defendants' contentions. In her Motion for Default Judgment, Plaintiff explained to the Court that she arrived at four years based on the number "4" indicated below "Tara Rose Wales / Estate Consultant / Realtor at Frontgate" on Defendants' LinkedIn page (*see* Doc. 20, p. 16 fn 2). Moreover, on April 17, 2026, Defendants' counsel inquired about the length of time that Plaintiff thought the Corson Photograph was available on the LinkedIn page. *See* Exhibit F to Defendants' Opposition (Doc. 21-7, p. 2). Plaintiff's counsel responded that it was 4 years and explained how Plaintiff arrived at that number. *Id.* Defendants' counsel replied "Thanks. Ok – I see that." *Id.* Defendants never raised any dispute concerning four years as the length of use until now.

As shown in the above correspondence, Defendants did not dispute Plaintiff's allegation of four years of use, and via Defendants' default, they have legally admitted to Plaintiff's factual allegation that use was for four years. The Court should accept Plaintiff's allegation as true and base Defendants' use on four years.

To arrive at a statutory amount for damages, Plaintiff has already explained the extent of Defendants' willfulness and believes the egregious nature of their conduct warrants a multiplier of five. "The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *Woolworth Co v. Contemporary Arts*, 344 U.S. 228, 233 (1952). "The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. *Id.*

Even though Plaintiff is alleging willfulness, Plaintiff has demanded an amount of statutory damages that falls in the range for non-willful infringement. This Court

has "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (citing *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, (1919)).

***B. Lack of Evidence To Show Actual Damages or Commercial Harm Does Not Foreclose A Statutory Damage Award***

Defendants contend that "Plaintiff proved no actual damages or attributable profits" and there was no commercial harm. (Doc. 21, pp. 2, 8.) "Even for ***uninjurious*** and ***unprofitable*** invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy. *Woolworth Co v. Contemporary Arts*, 344 U.S. 228, 233 (1952) (emphasis added). Actual damages include lost licensing fees to a copyright holder, and Plaintiff has provided licensing to show actual damages. Moreover, just because Defendants may not have made a profit from use of the photograph, which we will not know because no discovery was conducted, this does not prevent the Court from crafting an actual or statutory damages award based on a hypothetical license.

***C. The Proposed Getty License Is Not A Proper Comparable License To Assess Lost Licensing Fees***

Defendants submit a social media license from Getty Images ("Getty License") to use as an alternative baseline to assess damages. The proposed Getty License is not a proper comparable license.

The most glaring difference is between the two photographs. The Corson Photograph denotes an overall sense of quaintness with a soft, postcard-like appearance. It depicts a portion of Calabasas Road just in front of the Leonis Adobe Museum. The shot is taken from across the street and captures a landscaped streetscape with dense tree-cover and elaborate flowerbeds planted in the median area. A small white free-standing sign with brown letters is centered in the background behind a white picket fence and provides a soft, symmetrical focal point against a warm, hazy sunlit background.

By contrast, the photograph in the Getty License ("Getty Photograph") is functional and documentary. The shot is taken at the property's blacktop driveway entrance and showcases a large brown "Parking" sign with light brown lettering prominently displayed in the foreground to the left of the shot. There is a person working with a gardening tool in the background. There is no landscaping, and the trees have sparse or bare branches compared to the trees in the Corson Photograph.

The details captured and displayed in the Corson Photograph exemplifies a photograph that was professionally created for promotional use. The details captured and displayed in the Getty Photograph exemplifies a photograph that was created as a remembrance of a vacation trip.

Defendants chose to manually create the LinkedIn post. They manually selected and uploaded the Corson Photograph to their LinkedIn post and manually added text content stating "What sets it apart is thousands of open-space acres." The post provides <u>no other information</u> to explain what is being set apart by "thousands of open-space acres." Defendants relied on the Corson Photograph to help the viewer imagine that the subject matter in the Corson Photograph was a place that had open-space acres. Defendants did not choose to couple the Getty Photograph with the LinkedIn text content and likely would not choose to do so today for one simple reason – the Getty Photograph, with its large "Parking" sign, does not elicit any feelings of "thousands of open-space acres."

Thus, the Getty License is not a comparable license to use as a baseline measure for damages because the subject photograph is not comparable to the Corson Photograph, the photograph that was actually used, or the proper vehicle to achieve Defendants' intended goal of depicting a scene reminiscent of "thousands of open-space acres."

### ***D. Defendants' Numerical Comparisons Should Not Be Given Any Consideration***

Defendants provide numerical comparisons against the Getty License and sprinkle them throughout their brief: "[The settlement offer] culminat[ed] in an offer

that exceeded the $283 market comparator by about 13.4 times (Doc. 21, p. 4); "The final offer exceeded the $283 comparable market rate by $3,517." (*Id.* at p. 7); and "Plaintiff seeks about 56.5 times the $283 comparator." (Doc. 21, p. 10). Defendants unilaterally assume the Getty License is *the* proper baseline measurement for damages. No discovery was conducted to show the Getty License was *the* proper baseline measurement for damages, so none of these comparisons have any persuasive value. Defendants pivot and assert that "Defendants' final offer even exceeded Plaintiff's asserted $3200 license value by $600." (Doc. 21, p. 4.) While Defendants' final offer did exceed Plaintiff's asserted $3200 license value, the final offer did not cover all the costs or any of the attorney's fees. Thus, this comparison is misleading.

These numerical comparisons are sensationalized, nonsensical, and should not be given any weight.

### *E. Settlement Discussions*

Defendants submitted the entirety of the parties' settlement negotiation correspondence to (1) argue that they negotiated in good faith and (2) "rebut Plaintiff's assertions of bad faith, recalcitrance, [and] refusal to provide meaningful compensation." (Doc. 21, pp. 8-9.)

Defendants purposely mislead the Court regarding the timing of their refusal to engage in settlement negotiations solely for the purpose of introducing the entirety of the parties' settlement negotiation correspondence without running afoul of FRE 408. Defendants lead the Court to believe that Plaintiff characterized Defendants' conduct *during litigation* as unwilling to provide meaningful compensation. This is untrue. The factual allegations in Plaintiff's FAC clearly state that Defendants refused to negotiate *prior to* this lawsuit, and no characterization was ever made about Defendants' negotiation behavior *after* this suit was filed.

Defendants' refusal to negotiate outside of this lawsuit forced Plaintiff to file. Once the suit was filed, Defendants expected that Plaintiff would settle for an amount closer to the prelitigation offer. The prelitigation amount was a discounted amount

and did not cover costs or legal fees that were incurred, so any categorization of Defendants' negotiation efforts as being carried out in good faith is far-reaching.

Regardless, the fact that Plaintiff tried to settle this matter ***without*** filing a lawsuit not only shows Plaintiff's good faith efforts to settle but also Plaintiff's efforts to mitigate the costs of litigation. Plaintiff's offers decreased as Defendants' offers increased, and Plaintiff's final litigation settlement offer was more than fair. At that juncture, Plaintiff was willing to settle the matter, for $6,500 which included the costs and legal fees incurred ($4,275) and license fees of $2,225 (70% of the $3200 requested license fees). Unfortunately, Defendants' final offer of $3,800 did not cover costs and legal fees, let alone any lost licensing fees.

***F. The Court Should Consider Counsel's Attorney's Fee Request***

Defendants had the opportunity to settle this matter outside of litigation for what would have amounted to discounted lost licensing fees. Unfortunately, they would not engage in negotiations because they clung to a charade that the Corson Photograph was "autogenerated" by LinkedIn even after Plaintiff provided evidence that it was not. This forced Plaintiff to file this matter. Defendants chose not to continue negotiating or litigating, which forced Plaintiff to file this motion for default judgment. At every turn, Plaintiff has made reasonable and good faith efforts to resolve this matter and mitigate damages, but Defendants stretched out what could have been settled early on and forced it through the Court system. Attorney's fees are warranted, and Plaintiff and Plaintiff's counsel respectfully request that the Court consider granting Counsel's request to have the Court fix attorney's fees.

***G. The Court Has Everything It Needs To Decide The Amount Of Damages, Costs, And Legal Fees Without An Evidentiary Hearing***

As a "Hail Mary" move for Defendants, they encourage the Court to require an in-person evidentiary hearing, if the Court cannot determine damages on the documents provided. They rationalize that the Court can "better evaluate" evidence Defendants offered outside of discovery and their innocent infringement defense directly against Plaintiff's accepted factual allegations. At this juncture, the only issue

left to address is the amount of damages. If Defendants wanted the Court to evaluate matters beyond the amount of damages, procedurally, Defendants should have asked the Court to set aside the default.

Plaintiff strongly believes the Court has everything it needs to decide the amount of damages, costs, and legal fees without an evidentiary hearing and renewed her request above that the Court consider this matter appropriate for disposition without a hearing pursuant to Fed. R. Civ. P. 78(b) and Local Rule 7-15.

## CONCLUSION

Defendants strategically chose to default and must accept the procedural consequences of that decision. But Defendants seek to stretch resolution of this case both ways. They refuse to participate in discovery to assist the Court in determining the merits of the case but also ask Court to consider issues that have not been fleshed out properly through discovery to contest Plaintiff's factual allegations. This is highly prejudicial to Plaintiff because Plaintiff has not been afforded the benefit of discovery.

Even if, without the benefit of discovery, the Court determines what Defendants allege in their opposition is true, the Court should still award Plaintiff her requested damages, costs, and attorney's fees. The requested amounts were reasonable at the time the motion for default judgment was drafted, and as shown here, they are still reasonable.

DATED: September 23, 2026

Respectfully submitted,

**/s/ Mathew K. Higbee**
Mathew K. Higbee, Esq.
Cal. Bar No. 241380
**HIGBEE & ASSOCIATES**
3110 W. Cheyenne, Suite 200
North Las Vegas, NV 89032
(714) 617-8350
(714) 597-6729 facsimile
mhigbee@higbee.law
*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Lisa Corson, certifies that this brief contains 4195 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 23, 2026

**/s/ Mathew K. Higbee**
Mathew K. Higbee, Esq.

## CERTIFICATE OF SERVICE

This to certify that on this day, the 23rd of September, 2026, I served the **Reply in Support of Motion for Default Judgment** and have served all parties who have appeared in this case by using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record listed with the Clerk of Court

**/s/ Jayma C. Leath**
Jayma C. Leath, Esq.